All rise. The judges of the Bankruptcy Appellate Panel. Hear ye, hear ye. The Bankruptcy Appellate Panel for the Sixth Circuit is now in session. All persons having business before this honorable court, draw near, give attention, and ye shall be heard. God save the United States and this honorable court. Please be seated. Please. Case number 17-8009 and 17-8011. Joint Church Venture L.D. Appellate Cross Appellate. The first person, Earl Bernard Blasingame et al., Appellate Cross Appellate. Oral argument not to exceed 15 minutes per side. Mr. Burns-Agerly will be appellate. You may proceed. Counsel, before you do, and we're not going to count this against your time, so don't worry about that. I know how important that is. I'd like to thank the University of Memphis and the dean for accommodating us here today. We want to try to accommodate counsel as best we could, and this was a case of sin in Memphis, so we thought we'd come to Memphis. You all have been very accommodating so far, and I look forward to seeing some of you later on. But thank you very much, dean, for all that you've done and the courtesies you've extended. And we've been here in Memphis before, I believe, and we hope to have another great oral argument today. So with no further ado, counsel for the appellant, please. May it please the court. Bruce Akerly for the appellant. The underlying case from which this appeal progresses involved a declaratory judgment action seeking to determine whether or not a life estate interest conveyed under a trust instrument constituted property of the bankruptcy estate of the debtors. The bankruptcy judge ruled against us on summary judgment. We believe the bankruptcy court erred in two respects. One was allowing extrinsic evidence into the record to support her findings of intent with respect to the trustor informing the trust and specifically with respect to permitting a life estate to be granted to her son and her daughter-in-law under the trust instrument. The second error we believe she committed below was to determine that the trust, the life estate interest was equitable rather than legal in nature. We believe that that argument turns upon, one, whether or not the instrument created an actual legal interest in the residence that was conveyed, or the trust instrument with respect to the life estate was a dry trust. That's an issue that's a first impression. Most of the cases, as I suspect as you looked in our brief, and in Appley's brief, are rather old. There's not a lot of law in this area. And I will certainly address whatever questions the court might have. On the issue of- Counselor, excuse me. The complaint was for turnover of the debtor's interest in this trust or whatever it was. Is that correct? You're talking about the rules of turnover under the bankruptcy code? I'm talking about the declaratory complaint that was filed in the lower court, in the bankruptcy court. The declaratory complaint was to determine whether or not the life estate interest constituted an asset of the estate and then to turn that asset over to the bankruptcy estate so that it could be liquidated. So it expressly asked the bankruptcy court to determine whether this interest was property of the estate. Yes, under Section 541 of the bankruptcy code. And I get confused about the terms that are used as between the equitable life estate or the legal life estate. What difference does that make in your view toward whether something is property of the estate? Right. So as the opinion of the bankruptcy court indicates in our briefs as well, if it's an equitable interest, it doesn't come into the bankruptcy estate. It would have to be a legal interest. If the debtor has only held a beneficial or equitable interest in the life, in the property that is granted to them as a life estate interest, then the estate can't, the bankruptcy estate, can't affect that interest. What's the authority for that? Is that a provision of Section 541 or on which do you rely to make that determination? There is some language in 541, but it's primarily the analysis that is conducted by Judge Lada below to determine whether it's equitable or legal. And the case law, which basically says that if it's an equitable interest, then the interest does not belong to, as a legal right, does not belong to the grantee. And how do you determine it's an equitable right then? How did she determine? Right. Well, Judge Lada determined that it was an equitable interest because of the degree of control. Well, first of all, that the mother determined that she wanted Mr. Blasingame and his wife to have the benefit of living in the house. They owned the house before the trust was formed. They conveyed the residents into the trust. She wanted, Judge Lada determined through extrinsic evidence, that she wanted to, that Mrs. Blasingame, Marverine Blasingame, the mother, wanted to allow her son to live in the house for the rest of his life. That was a beneficial interest. Plus, the powers under the trust, she felt, controlled the ability to deal with the life estate. And that that, therefore, created a situation unlike a life estate outside of the trust environment, where they didn't, where you would have a legal interest to deal with the life estate. She felt that that interest was encroached upon or encumbered. And that made it an equitable interest and not a legal interest. Well, wasn't Marverine's intent clear in the trust agreement itself? Well, the trust agreement, if you look at Section 5 of the trust instrument, it is clear. I mean, I think it's unambiguous. It says that she wants her son to, she says an asset, okay, of the trust is the residence. And she wants her son and her daughter-in-law to be able to live there for their lives. Yeah, and so isn't that intent clear? I don't understand what a dispute as Marverine's intent is. Well, no, exactly. And I think what Judge Lara needed to do to get to her decision, that it was equitable interest, was she needed to figure out a way to determine that that was a beneficial interest or a beneficial grant, not an outright life grant, legal grant of the life estate. If you look at restatement of real property and general transfers in real property, you can grant a life estate, and that's a legal interest. That's a recognizable legal interest in real property. What she found was that there was a grant, but it was not a legal grant, it was an equitable grant. An equitable grant that could be taken away, could be encroached upon, could be hindered by virtue of the trust powers. And we believe that was incorrect. What she needed to do was find that the purposes or intent of the mother in granting the life estate was essentially for the benefit, the beneficial interest of the son. And that's why she went beyond the scope of the clear language. That's why we have a problem with her getting into the extrinsic evidence. But with respect to the actual grant itself, we think that that grant is, as clearly set forth in section five of the trust instrument, is a legal grant of a life estate. Tennessee does not require any special language to grant a life estate interest. But it recognizes that you can, and in all the cases we cited, it clearly puts out that essentially you can grant a legal interest in a life estate. The problem is, is when you allow others to encroach upon that interest. And what Judge Latta felt was that the trust instrument and the beneficial interest that the marvering blessing game gave to the son allowed, essentially, him to not have the legal title or legal life estate, but essentially a beneficial life estate, which was not, it wasn't his property, therefore. Okay, and so he couldn't deal with it as he wanted to. It could not become part into the bankruptcy estate. But to have a legal life estate, don't you need either a deed or a will conveying that life estate as opposed to a trust agreement, which is executory? And don't most of your cases, arguing about a legal life estate, deal with wills as opposed to an executory trust agreement? Most of the cases do deal with wills, but there are also some cases we've cited. If I could put my, the Atkins versus Marks case, Tennessee Court of Appeals out of 2008. We cited on page 27, I believe, of our brief. Talks about a trust which creates duties and imposes duties upon a trustee. I don't know, I'll be honest, Your Honor, I don't know if that involved a grant, I think it did involve a grant of a life estate. But also we had expert testimony in support of our motion for summary judgment. And our expert testified that, and actually their expert testified that you can create a life interest, a life estate interest through a trust instrument. It's perfectly acceptable. This trust was not recorded, okay? Normally you might see, I mean a will might not be recorded, but you can convey an interest. Tennessee law does not prevent, does not require that a life estate interest be granted any specific methodology. Are you suggesting that there are disputed issues of material fact here, or that Judge Latta erred as a matter of law? Well, I think that the material issues of, well, this is a review de novo of her legal conclusions. I think the facts are, we don't disagree with the facts per se. We disagree with the fact that she considered the facts. So for example, we objected to the consideration of extrinsic evidence. We don't doubt that, but you have to understand, then Maverine Blassingame passed away. And we don't have anything from Maverine Blassingame other than the trust instrument to express her intent. What Judge Latta did was she went outside that. She went to their former lawyer and others who testified as to what they recall her saying to them. And we find that, while I can't test that fact per se, I don't necessarily doubt that fact per se, I think it was wrong to consider that fact. Because I think it was beyond, as Justice Humphrey said, the clear language of the trust instrument, which conveys a life interest. And that in and of itself, we believe, creates a legal interest in a life estate. Now, setting that off to the side, and let's just say there's a problem or a question with respect to whether that language creates a life state. We think the trust is de facto dry, okay? If you have a trust that's passive or dry, that is, the trustee has no specific duties to impact the beneficiary. We don't get to that issue unless it's a trust, is that correct? Unless there's a trust? Yes. Okay, there's clearly a trust, and there's clearly a conveyance of a life estate interest. The question is whether it's a legal or an equitable interest could turn on whether or not the trust is a dry or passive trust. If it's a dry or passive trust, then the conveyance is clearly a legal conveyance of a right of a life estate, all right? And here, we believe the trust is effectively dry, because Judge Latta relied upon the decision in the Messengill case. I think we all cite the Messengill case, but that particular case is from the 1800s. It's fortunately or unfortunately one of the seminal cases in this area. But in that case, it's quite different, and I would ask that you compare the two in terms of facts. Here, the trustee, the beneficiary, and the life tenant are all the same. In the other case, the father transferred the property into the trust. Here, the son, who is the beneficiary, the trustee, and the life estate tenant, transferred the property. Yeah, but weren't there other beneficiaries besides Mr. and Mrs. Blasingame, the debtors? Remainder beneficiaries. Yeah, correct. But there are other beneficiaries? Just like in any life estate, you can have remainder beneficiaries. But those are contingent interests, contingent on whether there's a life estate present or not. Doesn't affect their interest, that is the Blasingame's interest. Now, Judge Latta phrased her decision, and I'm looking at her decision in the first paragraph on her conclusions of law. She said, the limited question before the court is whether or not the debtors hold a life estate in their residence. And then she goes on to conclude that according to the trust agreement, the debtors hold an equitable life estate in the residence. Then she goes on to say, at this time, the court expresses no opinion concerning the efficacy of the warranty deed to transfer a legal title to the debtors as trustees of the trust. And no opinion concerning the efficacy of the Spentra provisions of the trust agreement. My question is, in her finding it was an equitable possessor interest, didn't she have to decide those two issues of whether the warranty deed was effective and whether the Spentra provisions were effective? I see my time is up, if I may respond to the court's questions. You may respond. We'll give you a few more minutes, because we have some more questions for you, Counselor Segarria. No problem. We'll just keep track of the time, so the FLE gets the same amount of time as you do. To answer your question directly, and this is an issue raised by the appellee in their cross appeal, which we've moved to dismiss, and the court has taken it all together. But the issue with respect to the court raises is one that Judge Lada didn't have to make a specific, it's not precondition to find that the transfer was effective into the trust. There's no question that the Blasingame, Mr. and Mrs. Blasingame, the son and daughter-in-law, they conveyed the property at issue themselves into the trust. I mean, there's an instrument, it's a warranty deed. What Judge Lada did was she, sui sponte or off on the side, she's doing a sui sponte order essentially saying, did you all want me to consider the effectiveness of that transfer? That is, was that an effective transfer? What she was asking, I believe, was, is this a self-settled transaction, all right? If it's a self-settled transaction, then the spend-through trust provision doesn't apply, okay, and we can get at the asset, all right? We said sure, save time, save money, all that. The appellees disagreed, they didn't want her to decide that issue. And in fact, we have that issue pending now in another adversary proceeding. But that's why she said I don't need to, I'm not going to get into that issue. What she was looking at are the facts as they were presented to her, and that is a warranty deed transferring a piece of property into the bankruptcy estate. Which property then was the subject of the life estate? That answers Judge Humphrey's question on the first question, which is the efficacy, if you will, of the transfer of the property into the trust. But does not answer the question of the spend-thrift piece of it, which is how could she determine that it was not property of the estate, basically? Well, the answer to that question turns on what we're talking about, the life estate interest. The granting of a life estate interest is not an asset, it's a grant, right? What a spend-thrift provision does is it prevents a creditor from attaching or executing upon the beneficial interest of the beneficiary under the trust, right? It's protected, the whole purpose of it, and this particular trust has such a provision. The life estate grant is not an asset of the trust. It's a grant of an interest in an asset of the trust. And so for that reason, the spend-thrift trust provision has no impact, has no effect. I hope that answers your question. That's the argument we made to her, because of their transaction. Now, if there was no life estate interest, okay? And the Blaston Games just had a beneficial interest in the trust, right? We could not execute upon that property, right? Because it's a spend-thrift provision, right? But they were granted a life estate interest in the property, which is an asset of the trust, okay? That's their asset outside of bankruptcy, all right? And if Judge Latter were to have and should have determined that that was a legal interest or legal grant, not an equitable grant, but a legal grant, that interest can come into the bankruptcy estate and be sold for the benefit of the creditors, because the spend-thrift provision doesn't apply. The spend-thrift provision only prevents attaching assets of the trust, okay? That's not an asset of the trust, that's an asset of the Blaston Games. They were granted a life estate interest, and that's the argument on that. I hope that, I would be pleased to answer any other questions the court might have, or I'll give my time to Mr. Curry. Very good, I think we're fine for now. You've reserved how much time? I reserved three minutes. Three minutes? Well, we'll have that three minutes then. Thank you very much. Thank you. Mr. Jeffrey, about how much time should we allow? About five minutes. Five minutes? Is that acceptable? We'll give you another five minutes on top of the 15 that was already allocated. I think that's about right. Thank you, Your Honor. Thank you. I'm Michael Corey. I represent the appellees and the cross-appellants. I'd like to, I guess, start off addressing the cross-appeal issues. We have a case here where a declaratory judgment action was filed, seeking a determination that the trust instrument created a legal life estate. That's part of the reason why the court didn't need to reach the Spence-Riff issue, because they weren't contending in the alternative that if it was an equitable life estate, that it was invalid because there was no valid Spence-Riff trust. Their position was strictly to construe this as a legal life estate, which takes it, which creates a legal interest under Section 541, which is not subject to a Spence-Riff provision. So that was their theory of the case. And that's the only relief they really were seeking, was the determination this was a legal life estate. Okay. To, Judge Lauda directed the parties to enter into a joint pretrial statement. Parties did so. As part of that pretrial statement, the parties stipulated that the residence was an asset of the trust, that the residence was an asset of the trust when the case was filed in 2008. The residence was still an asset in 2015 when the adversary proceeding was filed. All those were stipulations of the parties. The court, in the court's ruling, the court ended up finding there was an equitable life estate but didn't reach the issue of ownership. Despite the fact the parties stipulated ownership, despite the fact that there had to be ownership in order for the trust to have conveyed any type of life estate, the court of sua sponte decides, well, I'm not going to decide the issue of whether or not the deed which granted, which conveyed the property to the Blasingame Family Trust and not the Blasingame Family Residence Generation Skipping Trust is a valid deed. And so what we end up finding is, and on paragraph 13, I think, of the court's ruling, she finds that if it's an effective deed, then it's a life estate. And I submit to the court that that's very telling because if it's an effective deed, it renders this into an advisory opinion. And it really, it also goes counter to the stipulation of the parties. So we've raised on cross-appeal, the court erred in not going ahead and finding that the residence trust was in fact the owner of the property for two reasons. One, the parties stipulated to it. And there's ample Sixth Circuit authority where stipulations of fact are binding on the court and on the appellate courts. And we submit that this was clear. And the court erred in not following the party stipulation. Secondly, we submit that by not making that determination, the court rendered what amounts to an advisory opinion. In order to have a declaratory judgment action, which is what this was, there has to be an adjudication of a present right based on established facts. Well, the established fact here, normally what you would have thought was that the trust owned this piece of property and the trust instrument turned around and conveyed a life estate issue, interest in it, whether legal or equitable. But didn't you object to her deciding the issues that she reserved? We briefed the issue. She asked that the parties to sua sponte brief the efficacy of the deed. And we did. We thought she was focusing on whether there was a scrivener's error. And the law is clear in Tennessee that you can introduce parole evidence to cure a scrivener's error on a deed on the name of a grantee. When we got to oral argument, what the court was asking to do was litigate a case that was not before the court. And yes, we objected to that. But now you want us to go ahead and fix all that for you, don't you? Pardon? You want us to basically ignore that and now fix it for you and say? Well, I think if the court agrees with me that the effect of her ruling, if there's no finding, then basically we have a, if it's a valid conveyance, then it's a life estate. That to me is on its face an advisory opinion. If the court had no jurisdiction, cases we cited in our brief suggested if the court's not going to correct that by finding that she erred and not following the stipulation, if you do that, then we still have jurisdiction. Okay. Okay. So you can say parties stipulated this. The court shouldn't have been meddling with that issue. Secondly. Let's stop for a second. I'm sorry. So if the parties agree to these facts, you think the court had jurisdiction to make those determinations is what you're saying? Absolutely. Okay. Go ahead. But if this court finds that she didn't err and not following the stipulation, then what we're left with is an advisory opinion, which she had no jurisdiction to give. I think the cases we cited say this court would have to dismiss the case because there's no jurisdiction for an advisory opinion. There's been no adjudication of a present right on an established fact. There's been no adjudication of anything that would cause the parties to affect the parties' behavior. It would be no different than had this trust instrument given the Dutch the right to live in the Trump Tower. Okay. And we could have a lawsuit over whether that creates a life estate in the Trump Tower unless the trust owned the Trump Tower. It's simply an advisory opinion. But wouldn't the remedy be not dismissal for us but to be remanded to have her make those specific findings? Again, we think the court doesn't need to remand it because she erred in not following the parties' stipulation. And again, the lawsuit was not filed on the basis of whether or not there was an effective transfer of property to the trust. That's a different lawsuit. And Mr. Akeley said he's filed that. That's pending. I'm sure it'll make its way up to the BAP as well. So remanding for that purpose, I think, would be remanding her to try an issue that was not covered by the complaint before the court. Now, you prevailed at the bankruptcy level. You're asking this court to basically dismiss that lawsuit then? That's, well, the parties and the court can't create jurisdiction where there isn't any. Right. So dismissal is really not my ideal result here. I don't think either party wants to retry this case, summary judgment or otherwise. We think the court doesn't have to reach that result if the court finds that the court erred in not following the parties' stipulation. So instead of taking the bankruptcy court's opinion where it says if and it appears, just say these are the facts because that's what the parties stipulated to. That would be acceptable for the APEL League across the parallel lines of what you're saying? Yes. Fair enough. So if the court finds that the court erred, then we have jurisdiction to address the other issues on appeal. With respect to the court's determination of equitable life estate, we have a situation here where they argue that the court erred in considering extrinsic evidence. We cited numerous cases in our brief from Tennessee. I do agree that most of them are pretty old, but the Schultz case is a 2008 case which we cite. But we cite numerous cases. I think they're all pretty much in the will construction arena. But they find that while yes, the court should look and try to ascertain the settlor or testator's intent from looking at the four corners of the document, under Tennessee law, the court can look at the circumstances surrounding the execution, things that were known to the settlor or testator in creating the document. And those peripheral events can be considered in construing the language of the instrument and the intent of the testator. The proof in this case shows without contradiction that this trust was formed as a spendthrift trust in order to prevent the bank from foreclosing on the debtor's house. Not an uncommon scenario in bankruptcy for family members to come to the aid of debtors. And that's what happened here. But wasn't the deal already with the bank already struck? Wasn't this all part of the deal with the bank? That the bank was going to receive this $400,000 or 440, 460, whatever number it was? And they were going to set up this trust and stuff. But wasn't that all already part of the deal before? So wasn't it maybe to protect it? I'm not saying that it was protected from the bank because I thought this was all part of the deal with the bank to begin with. Well, to know that you have to go outside the four corners of the trust instrument. And again, I think that influences what the settlors thought process was here. Settlor was trying to protect the house from foreclosure and protect it for not only her son and daughter-in-law, but grandkids and subsequent beneficiaries down the line. So that being the circumstances surrounding the execution, I think that weighs into the court's determination that this was not, there was no intent to create a legal life estate here. You didn't have to create a trust if you were going to create a legal life estate. Secondly, to the extent the court accepts the argument that, well, you can create a legal life estate within the confines of a trust, why would you do that? Why would a settlor intend to do that if the purpose of the trust was to create a Spencer of trust to keep the house from being foreclosed on? So the settlor wouldn't pay $440,000, loan it to the trust, create the trust, forgive the debt, all for the purpose of transferring the property into the trust, and then turn around and have the trust create a legal life estate, which is, again, subject to claims of creditors. So do you believe, then, that the bankruptcy court, let me rephrase that, what do you believe the basis for the bankruptcy court's denial of the turnover aspects of the complaint was? You know, the turnover, as I recall, was they wanted the debtors to pay, assuming it was a legal life estate, their position was that the debtors had been living there rent-free since 2008, and therefore, they should pay rent. And again, the court, I think, in dismissing that count, basically found, I found it's an equitable life estate. Therefore, there's no legal interest. And do you believe that the bankruptcy court found that the spendthrift language in the trust should be given effect, and that's why it wasn't property of the estate? Both parties seem to keep saying that, well, it's an equitable interest, so it's not property of the estate. But as I read 541, I'm not seeing that, is in play with respect to spendthrift interest. The complaint before the court only sought a determination of a legal life estate. It did not seek a determination that this was a self-settled trust. And in fact, we cited a case that issue, we say, has been litigated adversely to church joint venture in federal court, where the federal district court denied a declaratory judgment action that all the assets of the resident's trust were property of the estate. And the court there found that the settlor was mavering blasting game, not the debtors. So this was not before this court as to whether or not this was a spendthrift trust. But on the cross appeal, are you not asking us to look at that issue? No. On the cross appeal, we're asking this court to find that she should have followed the stipulation of the parties that the trust was the owner of the residence. And the ownership of the residence was a jurisdictional fact in order to have a declaratory judgment action. We argue in our brief that there are other, once you get past the extrinsic evidence issue, there are numerous provisions in the trust instrument which we think support the court's finding that it's not a legal life estate, namely the fact that the trust allows the trustees to encroach upon corpus for the health benefit of the beneficiaries, education. It allows the trustees to sell the property. Those are all things which would be inconsistent with a legal life estate. Because if there had been a legal life estate, the trustees couldn't sell the residence. Secondly, that despite the language in 5B of the trust instrument, which says one of the assets of the trust is a principal residence which shall be used for the following people to live in, again, that's not really language of conveyance. To me, it's more instructions to the trustees that you're going to permit these people to live in the house for their life if they want to. But there's section 5D1 of the trust instrument specifically provides that if the debtors pre-decease their children while their children were still minors, and if at that time the residence was still an asset of the estate, then basically the aunts and uncles could live in the house for free and take care of the minor children. The fact that 5D1 contemplates that there could be a scenario where the debtors could pre-decease their minor children and certain things would happen, but only if the residence was still an asset of the trust, demonstrates the settlor's intent that the house could be sold. And you don't need to go outside the four corners in order to reach that conclusion. So to the extent Church argues that 5B somehow is inconsistent with the encroachment provision, Spenshrew provision, paragraphs 9A and 9G of the trust, the intent is shown in 5D where the settlor expressly recognized the possibility that despite the language of 5B, the trust might not be an asset of the trust at the time the debtors pre-deceased their minor children. We think that we argued below, not that it was an equitable life estate, but that it was an equitable possessory interest. Again, for the very reasons that whether you call it equitable, any time you call it a life estate, it denotes that somebody's got the right to live there. It also, generally under state law, imposes obligations that you're not going to waste the property. Under Tennessee law, a life tenant normally has the duties to keep insurance on the property, pay taxes, those kinds of things. Here, the record before the court was the trust has always done that. And the beneficiaries never paid the taxes or the insurance or maintained the property. That was all done at the expense of the trust. So it doesn't, I'm sorry, go ahead. No, I was going to say, but is there any Tennessee case law recognizing this difference or characterization you make and calling it equitable possessory interest as opposed to an equitable life estate? We haven't been able to find anything, Your Honor. There are cases we've cited from around the country. Most of them are old cases from other states. There is a fairly recent bankruptcy decision, I think, in Ray Hilson, which parses through the distinction between a life estate and an equitable possessory interest. But we agree with the bankruptcy court that the debtor's interest is an equitable one. We have trouble with the life estate characterization for the reasons stated. But if that ends up being the determination, so be it. But there are certainly things that are inconsistent with it being a traditional life estate. Now, the restatement of property has suggests that you can have a life estate with conditions. And maybe that's what we end up with here, is an equitable life estate with conditions attached to it. In the remaining time, I'd like to address the dry trust argument. First off, the dry trust argument was not raised by Church Joint Venture in the court below. General rule is the court shouldn't, while this court has some discretion in allowing arguments to be raised for the first time on appeal, we submit that discretion should not be exercised in this case, where the issue should have been raised in their complaint, for starters. And secondly, the trial court should have been able to weigh in on it. And we should have been able to respond to that in the court below. But more importantly, it's not a dry trust, because the trust instrument recites one of the assets of this estate is the personal residence. The record is clear that the real property owned by the trust contained several improvements. One was the personal residence. There were two other residences, one used as a rental house. And the proof in the record is this rental house was always maintained and operated by the trust. The trust collected the rental income from the rental house, paid trust expenses with that income. So that fact alone creates other assets which the trustees had duties towards, which make it not a dry trust. Secondly, even if the court affirms and finds that this is an equitable life estate, the Massengill case cited by both parties and the court in finding that there was an equitable life estate expressly found that in that case it was not a dry trust, because the trustees had ongoing duties to protect the trust from creditors. So if this is an equitable life estate, then under the Spence-Rick provision, the trustees would have the duties to similarly protect this property as the trustees in Massengill did. Lastly, they argue that there's a doctrine of merger. Again, this was not raised in the court below. We submit to the court that the doctrine of merger has no application to this case, because there was, under Tennessee law, under Tennessee trust code, you can have the same trustees and same beneficiaries so long as they're not the sole trustees and sole beneficiaries. So by statute, the doctrine of merger doesn't apply. Thank you. I want to follow up on one thing, and you may have a chance to respond afterwards. It was another issue. The other property you described that creates rental income in this trust, that was never part of the litigation at the bankruptcy court level then? It was certainly part of the record that the bankruptcy court made no finding as to whether or not the residents included that other property. But that wasn't the subject of this adversary proceedings. We also want to collect the rents from that property? Well, there was certainly argument and briefing below as to what principal residence meant. OK. And again, in the context that the trust instrument says, one of the assets of this trust is the principal residence. It doesn't state what the other assets of the trust are. And we have a conveyance into the trust of property of 27 acres, of which there are multiple improvements, only one of which is a personal residence. That answers my question. Anything further you want to wrap up, or are you all set? Unless the court has any further questions, I'm concluding. Thank you. Thank you very much. You've reserved some additional time, so go right ahead. Thank you. I'd like to address a couple of things that Mr. Curry addressed in his opening remarks or his argument. First of all, on the question of whether or not the court took up the issue of effectiveness of the transfer. As I mentioned earlier, there was a transfer. Mr. and Mrs. Blassingame, the debtors, transferred the 27.99 acres and improvements into the trust, to themselves as trustees. So it was an asset of the trust. The question of whether or not we stipulated to ownership. There is a question as to whether or not that transfer was effective. It's being litigated in another matter. We didn't stipulate, and a couple of reasons. One is, first of all, the joint pretrial order that we have those stipulations in was never entered by the court. This never went to trial. All right? And we cited, if the court will look at the Derby case, we cite on page 14 of our third brief. The case clearly talks about a joint pretrial order and stipulations in the joint pretrial order that's never entered, not being binding on the parties. In any event, the actual stipulations don't say anything about effectiveness of transfer. It just says the trust owns this property. The trust, it just states the facts. Well, then what's the issue of the effectiveness? What is the issue of the effectiveness? What issue are you raising with that? Well, it's an issue that it's not in the case. It's not in this case. It's an issue that Judge Latta raised to respond to asking the parties if they wanted her to address the issue. The effectiveness issue, as I mentioned before, deals with the impact of the spendthrift trust provision. So it has nothing to do with life estates or anything like that. If the Mr. and Mrs. Blassingame's conveyance of the property into the trust was not effective, that is, didn't affect it, why would it not be effective? Well, a couple of reasons. One is there's a consideration issue for that. Two, there's a language issue. The transferee is not the same as the trust name. In other words, there's a misnomer in the name. And then there's other nominal issues that we've raised in our self-settled trust. If you stipulated that it was owned by the trust, wouldn't it defeat those arguments? No, because it's stating the present facts. The present facts are that the property is owned by the trust. It doesn't mean whether or not we can't set that aside later as a self-settled trust. Okay, it's a self-settled trust issue is what you're getting at. Exactly, and that's what- Not the actual conveyance, not the document, it's a self-settled. You're saying it's not effective. It's, in essence, and correct me if I'm wrong here, isn't what you're saying that the trust doesn't own that real estate? Because the Blassingames were transferring it to themselves. Effective. Were transferring it to themselves, so it's therefore not owned by the trust. It's still owned by the Blassingames because, I mean, I think it relates to your merger argument. They were transferring it from themselves to themselves, therefore, it wasn't effective. Yes, and therefore, the trust provision doesn't apply. And therefore, the property comes into the bankruptcy estate and can be sold for- But isn't that argument that the trust doesn't own the property? No. It's the Blassingames that own it, because their conveyance wasn't effective. If you look at the record, I mean, if you look at the present record, the trust owns the property. I mean, there's a warranty deed into the trust. But the effectiveness of that transfer has never been challenged. That's not- But if the transfer was not effective, don't the Blassingames own the property? Exactly, exactly. But we have to have that determination, and that's teamed up in another action. I'm sorry, what did you say? They didn't break that issue. They didn't raise that. Judge Latta wanted to decide that issue, okay? Well, that's an error of court if it wasn't in your movie to raise that issue. And we have- In the complaint? And we have, in a separate action. But why not in this action? Because that wasn't, this action dealt with the life estate. You're the plaintiff though. I mean, it seems to me you could have put in your complaint number one, the deed was never effective. So therefore, the Blassingames own the property free and clear with all this other bells and whistles. Or number two, what you did plead, I'm a little, I'm just not sure why you didn't just put them all together at one time. We didn't do it that way. We weren't required to, and we didn't plead it. In fact, this is collateral, but in fact, as Mr. Curry would suggest, is that we bought, we own that, that is the creditor, my client, Church Joint Venture, actually owns that cause of action and should be asserting it in another form outside of bankruptcy. So it's an action that doesn't have to be. She found that we could pursue it in the bankruptcy derivatively as a separate cause of action, and we did, but- Did the district court rule against you on that issue? No. No. No. It was not, now the action in the US district court has to do with alter ego fraud and other causes of action. There was no action with respect to self-sold trust. So, I- Continue on, we've interrupted you a number of times. Well, that's fine, I just wanted, one other thing I wanted to mention, two things. Actually, in section 5B of the trust instrument, Mr. Curry says that's not language of conveyance. And I would respectfully disagree, first of all, he didn't cross appeal on that issue. If he wanted, if he had a problem with the fact that there was a conveyance, that is the fact that Judge Latta determined that it conveyed a life estate, albeit equitable, he should have challenged that on appeal. The other thing is his expert, as well as our expert, both agreed that you can convey a life estate interest through a trust instrument. And didn't necessarily disagree with the fact that the language here didn't effectuate a conveyance. The issue is, under Tennessee law, what language is necessary to effectuate a life estate grant? And there is no guidance, statutory guidance, there's nothing that you can look at. And all we have are cases, and we've cited those, and this is an effective transfer. Finally, the dry trust issue is interesting, and I would just leave the court with this. If you look at the Massingill case, which is really the pivotal dry trust, passive trust case, it's rather old, 1800s, but it's still operative law. Facts are completely different than they are here. It did not involve a transfer by the, where the Blast Games transferred their asset into the trust, a trust in which they're the trustee, they're the co-trustees, the beneficiary, and the life tenant. So in Massingill, actually the father, I believe, transferred or owned the property and transferred it himself and conveyed a life interest in the property. Completely different, and that's why I said earlier that this is a case of first impression with respect to the scope of what happened here. And I will leave the court with this. And that is that, if you remember from the very beginning, the reason this trust was set up was to protect Mr. and Mrs. Blassingame and their house. And the property, the 27.99 acres, all right? That's the asset of the trust, okay? You can try to say, well, it's got a rental house over here, and it's got this improvement over here, but it's all on 27.99 acres. And the mothers, the mother helped them get there. They set this trust up, and now what they basically do is they set it up and they allow themselves to do exactly what they were doing from the very beginning, and that is living on the property for their lives. And they control, they control the powers, they control the duties and the responsibilities of themselves. That includes who pays the taxes, who maintains the house, and they're basically telling each other what to do. And that's why I argue that it's a passive dry trust. There is no, there is no clear encroachment that can happen. As in Massengill, there could be encroachment. There could actually be, the trustee was separate, could actually encroach upon and had duties that could encroach upon the beneficial interest in the life estate interest. Here you don't have that. Here you have the same people that are dealing with the situation. And for that reason, we believe that this is just essentially a vehicle that was set up for one purpose. And that is to keep this residence away from creditors. And it was improper, and we would hope that the court would reverse schedule that on that point. So, would your lawsuit go away if there are two different trustees other than the debtors? If the trustees were not the debtors. Right. There might be a different result. But again, I would caution that you need to look at the powers that are cited by both parties in their briefs. The 5D, the 5G, the 6, okay. Those powers all are powers that have nothing to do with the trust. I mean, I'm sorry, the life estate. And just, and perhaps I'm repeating myself, but you contend that the basis for the denial of the turnover was the finding that this was an equitable life estate. And that that, in and of itself, is sufficient to deny turnover. Yes, once she found that it was an equitable life estate, it wouldn't come into the bankruptcy estate. Which means the bankruptcy estate would not have any right to sell the property, get rentals from the property, get the past due rentals, that all went away. Thank you. Thank you. Well, obviously not the issue of opinion right now. We'll take it under advisement and issue a written opinion later on. So thank you very much for your excellent arguments and being good sports of answering our questions, so thank you. The bankruptcy appellate panel now stands adjourned.